## J. F. SMITH ET AL. *v.* GEORGE LEAVENWORTH.

### [57 South. 803.]

1. TAX SALE. *Validity. Alluvion. Apportionment. Navigable waters.*

   A sale of the land for taxes is void, where at the time of such sale the lands are assessed to the state, and the fact that before the sale was had, some one drew a line through the word "state" on the assessment roll does not validate the sale, as such change did not constitute an assessment of the land to unknown owners.

2. CODE 1892, SECTION 2735. *Tax title. Possession.*

   By virtue of Code of 1892, section 2735, so providing when a party and his grantor have been in possession of land for three years under a tax deed, he obtains a good title, even though the tax deed was void.

3. TAX DEED. *Alluvion. Title.*

   A tax deed describing the property as "all fractional section 24, township 27, range 7 west, in Coahoma County;" conveys title to the alluvion which has been formed by the river adjoining said section 24.

4. NAVIGABLE WATERS. *Alluvion. Title.*

   The owner of land adjoining a navigable river owns the alluvion formed in front of his land, though such alluvion first commenced to form in front of adjoining property and extended later in front of his property.

5. NAVIGABLE WATERS. *Alluvion. Apportionment.*

   The general rule for apportioning alluvion between coterminal land owners, is to give each such proportion of the new shore line as they possessed of the former shore line before the formation of the alluvion. This rule however is not absolute and there may be exceptional cases requiring the application of a different rule in order that justice may be done.

APPEAL from the chancery court of Coahoma county. HON. M. E. DENTON, Chancellor.

Suit by George Leavenworth against J. F. Smith et al. From a decree for complainants, defendants appeal.

Complainant filed a bill in chancery, setting up his claim to fractional section twenty-four, township twenty-seven, range seven W., in Coahoma county, and alleging that defendant Smith claimed title to section fourteen adjoining and that said lumber company claimed the timber on said section fourteen by virtue of a deed from said Smith. The bill further alleges that, at the time this land was originally platted, sections fourteen and twenty-four were fractional sections, extending to the old river bank, which touched the corner of sections thirteen, fourteen and twenty-four; that for many years accretions have formed along the old river bank, and the channel of the stream was changed; that on the land so formed by these accretions there has grown up valuable timber, and that said lumber company claiming under its deed from Smith, has entered upon a certain portion of the accretions between the north and south line passing through said corner and an east and west line passing through said corner; that the accretions in question lie south of section fourteen and west of section twenty-four, and extend to the present channel of the Mississippi river. The bill further alleges that said lumber company is claiming the ownership of the timber on this disputed territory by virtue of its conveyance from Smith, which conveys, among other sections, section fourteen, "together with all accretions thereof. The latter include the accretions lying west of a line extending from the corner of sections thirteen and fourteen and twenty-four, south to the bank of the river, as well as accretions lying west of sections fourteen and eleven." This conveyance was dated December ·29, 1906. The prayer of the bill is for an injunction to restrain the cutting by the defendants of the timber of the complainant on this disputed land, and for a decree settling the rights of the parties to the accretions formed

in this territory, and establishing a boundary line be-
tween the accretions belonging to complainant and de-
fendants. The answer of the appellants attacks com-
plainant's title to section twenty-four and to the accre-
tions in question, and is a general denial of the allega-
tions of the bill of complaint. The answer does not set
up any claim of title to section twenty-four in the de-
fandants. On the hearing the court entered a decree di-
viding the accretions between the complainant and de-
fendants, giving equal acreage to each of the accretions
in the disputed territory. From this decree defendants
appeal.

The complainant deraigns his title as follows: "Tax
Collector to the State of Mississippi. Tax sale, dated
1876. Consideration, $16.80. Sold for the taxes of 1875.
Lands conveyed: All fractional section 24, township
27, range 7 west." "Tax Collector to the State of
Mississippi. Tax sale, dated 3|8|81. Consideration,
taxes for 1880. Lands conveyed: All fractional section
24, township 27, range 7 west." "State of Mississippi
to John Scott. State tax deed, dated 5|20|99, filed 1|8|01,
recorded 1|21|01, Book 1, page 527. Consideration,
$40.50. Land conveyed: All fractional section 24, town-
thip 27, range 7 west." "Jno. Scott to George Leaven-
worth. Warranty deed, dated 3|13|02, filed 3|19|02, re-
corded 3|19|02, Book 4, page 22. Consideration, $80.00.
Lands conveyed: All fractional section 24, township 27,
range 7 west." It will be seen that complainant relies
upon a tax sale in March, 1876, for the taxes of 1875,
and also a tax sale in March, 1881, for the taxes of the
year 1880. It seems that there was some irregularity
in the sale for the taxes of 1875, and the lands were
again listed, and sold in 1881 for the taxes of 1880.
Complainant entered into possession of said section
twenty-four, in the year 1899, by agreement with Scott,
who afterwards executed a deed to the property, and re-
lies, also on adverse possession for a space of three years

after two years from the date of said tax sale, as provided by section 2735 of the Code of 1892, brought forward as section 3095, Code of 1906.

The defendants attack the sale of 1881, because the land was not subject to taxation at that time; the title being then vested in the state under the sale of 1876, which latter was a valid sale. It seems that the attorney general had found some objection to the sale, and had ordered the lands struck from the auditor's records and certified back to the county. When they were so certified back, the sheriff or clerk, or some one in the office of one of these officers, ran a line through the word "State" on the assessment roll, said land being listed as belonging to the state, and the sheriff then proceeded to resell the land to the state for the taxes of 1880. The land is described in the tax deed as "all fractional section 24, township 27, range 7 west."

The following is a plat of the premises in question:

*O. G. Johnson,* for appellant.

*Maynard & Fitzgerald* and *Wynn & Wasson* for appellee.

No brief of counsel on either side found in the record.

SMITH, J., delivered the opinion of the court.

The sale of the land in controversy to the state for taxes in the year 1881 was void, for the reason that it was at the time assessed to the state. The two faint pencil lines, if such in fact there be, drawn through the word "State" on the original assessment roll, cannot be held to constitute a change in the assessment, and to be the equivalent of an assessment to "Unknown," as contended by counsel for appellee. Public records cannot be altered in such a loose and irregular manner.

Appellee and his grantor have been in possession of this land for more than three years under this tax deed, and consequently appellee's title has been perfected by section 2735, Code 1892. *Hamner* v. *Yazoo Delta Lumber Co.* (this day decided), 56 South. 466.

One of appellant's contentions is that the alluvion formed opposite fractional section twenty-four was not embraced within the description of the land as assessed and sold. The description was as follows: "All fractional section 24, township 27, range 7 west, county of Coahoma." In addition to this, the assessment roll, under the heading "Number of Acres Held by State for Taxes," contains the figures 166. When fractional section twenty-four was originally surveyed and platted, it contained only 166.16 acres; the Mississippi river forming its southern and western boundary. Afterwards a large amount of alluvion formed opposite this section and section fourteen, the property of appellant lying north of it. This alluvion became the property of the owners of the mainland, constituted a part of each section to which it formed, and is included in the assessment and deed describing the land by its sectional number. *Jefferies* v. *East Omaha Land Co.*, 134 U. S. 178, 10 Sup. Ct. 518, 33 L. Ed. 878; *Towell* v. *Etter*, 69 Ark. 34, 63 S. W. 53; *Crill* v. *Hudson*, 71 Ark. 390, 74 S. W. 299.

The fact that the alluvion began forming north of section 24 and opposite the land of appellant is immaterial.

When it reached appellee's shore line in its southward progress, he became entitled to his portion thereof. The general rule for apportioning alluvion between coterminous landowners is to give each such proportion of the new shore line as they possessed of the former shore line before the formation of the alluvion. This rule, however, is not absolute, and there may be exceptional cases requiring the application of a different rule, as was done in the case at bar, in order that justice may be done. This however, it is unnecessary for us to decide, for the reason that the method of apportionment adopted seems to be more beneficial to appellant than the general rule, and we do not understand him to seriously complain of the method of apportionment, but of the fact that any apportionment was made at all.

*Affirmed.*
*Suggestion of error filed and overruled.*